Eugene Siegel, Plaintiff-Appellee, v. Continental Casualty Company, a Corporation, Defendant-Appellant.

Gen. No. 47,983.

First District, Second Division.

October 4, 1960.

Taylor, Miller, Busch, and Magner, of Chicago (Robert M. Bailery, of counsel) for appellant.

Rosenblum and Lipnick, of Chicago (Burton Joseph and Alan D. Kovitz, of counsel) for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court.

Continental Casualty Company, defendant, issued to Eugene Siegel, plaintiff, upon written application, a medical and surgical expense policy (No. 772 503) on January 1, 1957, and a business and professional accident and sickness policy (No. 898 852) on April 12, 1956. From the stipulated facts it appears that both these policies lapsed on January 1, 1958 for failure to pay premiums due thereon; that on March 26, 1958 Sol S. Siegel, brother of the plaintiff, delivered a

check in the amount of $290.00 to David Simons and Associates, the general agent of Continental Casualty Company, $126.00 of the amount representing the premiums required to be paid in connection with reinstatement of plaintiff's two lapsed policies; that on April 1, 1958 Eugene Siegel executed and delivered to David Simons and Associates an application for reinstatement for each of the lapsed policies; that these applications were sent to the underwriting department of Continental Casualty Company where, on April 8, 1958, they were examined and approved by Frances Gallagher of that department, and so noted on the applications; that Eugene Siegel was then sent an official receipt for premium for each policy; and that the illness for which Siegel is making claim began on April 16, 1958. Continental contends that this claim is not payable under the terms of its policy; there is no dispute as to the amount of the claim which is estimated at $2224.30.

The sole issue presented is a determination of the date upon which the policies were reinstated. The trial court held that reinstatement took place on April 1, 1958, the date that Siegel executed and submitted the applications. It is from this finding and judgment that Continental appeals, contending that reinstatement took place on April 8, 1958, the date the applications were approved by its underwriting department.

The procedure, rights, and obligations of the parties with respect to reinstatement in the event of lapse are explicitly provided for in each of the insurance contracts; in fact, such a clause is required to be included in every accident and health policy under the provisions of section 357a of the Illinois Insurance Code (Ill. Rev. Stat. 1959, ch. 73, sec. 969a). The pertinent language of the statute incorporated in both policies is as follows: "REINSTATEMENT: . . . if the

292

Company or such agent requires an application for reinstatement and issues a conditional receipt for the premium tendered, the policy will be reinstated upon approval of such application by the Company or, lacking such approval, upon the forty-fifth day following the date of such conditional receipt unless the Company has previously notified the Insured in writing of its disapproval of such application. The reinstated policy shall cover only loss resulting from such accidental injury as may be sustained after the date of reinstatement and loss due to such sickness as may begin more than ten days after such date." The application for reinstatement executed by plaintiff refers to the policy as follows: "6. I . . . hereby agree that if the above numbered policy is reinstated such reinstatement shall be in accordance with the terms of the policy and shall not take effect until premium accompanying this application has been duly accepted by the Home Office of the CONTINENTAL CASUALTY COMPANY."

The purpose and effect of the statute and the provisions of the policy requiring an application for reinstatement when a policy has lapsed (in this case three months had intervened) is to permit the insurer to reexamine the risk it is considering reinsuring. The exclusion of benefits on account of illness occurring within ten days following reinstatement was evidently deemed by the Legislature to be an important and a fair qualification of the rights of an insured who allowed his policy to lapse; and to hold that lapsed policies are reinstated on the date the application is made, rather than when approved by the insurer, deprives the insurer of a ten-day grace period for sickness subsequent to a reinstatement which would be made only after a reappraisal of the risk.

■ ■ Counsel say that there appear to be no cases in Illinois in which the date of reinstatement was in

dispute, but that several decisions in this State are helpful in determining how and when reinstatement of a lapsed policy is effected. In Kahn v. Continental Casualty Co., 391 Ill. 445, 63 N.E.2d 468 the court said (p. 457) that "plaintiff had an absolute contractual right to have the policy reinstated by doing two things, viz.: (1) payment of the defaulted premium, and (2) submitting evidence of insurability satisfactory to the company." Likewise, in Froehler v. North American Life Ins. Co., 374 Ill. 17, 27 N.E.2d 833, wherein the jury found that the insured had acted in good faith and that the company delayed an unreasonable time in passing on the application, the court stated (p. 23): "In his original policy of insurance the deceased bought and paid for a right to be reinstated after default in payment of premium upon furnishing evidence of insurability satisfactory to the company, and the payment of all past-due premiums with interest." In Reed v. Washington Nat. Ins. Co., 6 Ill.App.2d 49, 126 N.E. 2d 517, on the ground that the insured had not furnished honest evidence that she was in sound health at the time of applying for reinstatement of her policy, the insurance company refused payment under the policy and tendered return of the premiums paid by insured upon applying for reinstatement. Plaintiff, as beneficiary under the insurance policy brought suit to compel payment. The court held with defendant that plaintiff failed to prove that the insured furnished honest evidence of her sound health at the time of applying for reinstatement, and in setting up the facts the court stated that the insured applied for reinstatement on September tenth and that reinstatement took place on September twenty-second. The concept of reinstatement is clearly set forth in Hogan v. John Hancock Mut. Life Ins. Co., 195 F.2d 834 (3rd Cir.), where the court said (p. 837): "A reinstatement provision in a policy of life insurance contemplates the

making of a new contract between the parties, which the insurer is not obligated to do unless satisfied that the original risk is still insurable. . . . Upon receipt of a reinstatement application, the insurer has the right to require further evidence of insurability, so long as it acts reasonably in so doing, or it may agree to reinstate upon the basis of the information in the application itself. . . . In either event, reinstatement is never effectuated until the insurer acts on the application."

Plaintiff contends that the policies were effective as of April 1, 1958 for several reasons. It is first urged that the applications for reinstatement contained the insured's request to reinstate the policies as of April 1, 1958; that such applications constituted an offer to reinstate which was accepted by the insurance company; and that accordingly the parties agreed to reinstate the policies as of April 1, 1958. This argument runs counter to the clear provisions of the statute and of the policies. To adopt plaintiff's contention it would be necessary to rule that he had the right to alter the provisions of the policies and determine the effective date of reinstatement. Secondly, it is urged that the application forms for reinstatement and the provisions of the insurance policies in question are so ambiguous, conflicting, and susceptible of different meanings that a construction should be adopted which favors the assured. As we read the policies, there appears to be no ambiguity in the language employed. The policies provide that reinstatement will be made upon approval of the application by the company. Lastly, it is stated that plaintiff paid and Continental accepted the full amount of the premiums required for reinstatement; and that in so doing, the policies were respectively reinstated for one year for the policy expiring April 1, 1959, and for three months for the policy expiring July 1, 1958. It is argued that plaintiff was entitled to be insured for the entire year after the annual policy

and for a full three months under the quarterly policy; that the only way the insured would have received the full coverage for the terms specified is if the policies were reinstated as of April 1, 1958; and that an acceptance of Continental's contention that benefits begin for sickness ten days after April 8, 1958 would be to require plaintiff to pay for insurance for a period between April 1 to April 8, 1958 for which Continental would accept no risk. This is an interesting proposition; plaintiff might be able to require the company to afford him coverage for the full term of the policies running from the date of reinstatement. But that issue is academic here; the question to be determined is when coverage begins, not when it terminates. Was the company required to afford protection during the reasonable interval of reappraising the risk to which plaintiff exposed himself by delayed payments? If the company had decided to disapprove plaintiff's applications for reinstatement, he would have had no claims against it; it seems to us it would be illogical to rule that because it did approve plaintiff's applications it thereby lost the benefit of the ten-day period specifically reserved to it in the reinstatement provision. We hold that reinstatement became effective as of the date of approval of the applications, and since plaintiff's illness began within ten days following the date of reinstatement, he is not entitled to the benefits of the policies.

From the foregoing considerations we have reached the conclusion that the judgment of the Municipal Court should be reversed since plaintiff's claim is for sickness beginning within ten days after reinstatement and is not covered by the policies, and it is so ordered.

Judgment reversed.

BURKE, P. J., concurs.

BRYANT, J., dissents:

On April 1, 1958, the insured submitted an application for reinstatement of his insurance policies. In the application the insured specifically requested the company to "reinstate 4/1/58." The intention of this offer was that the policies should take effect on April 1, 1958. On the other hand, paragraph 6 of the Application for Reinstatement form specified that the reinstatement was to be in accordance with the terms of the policies, which would delay the effective date of the policies until acceptance by the Home Office. The official receipts of the company indicated that the policies were paid to April 1, 1959 and July 1, 1958, respectively. This would seem to support the inference that the date of reinstatement was thereby agreed to become effective on April 1, 1958. The illness in question occurred more than ten days after this date of reinstatement, on April 16, 1958, and would therefore be covered under the policies.

A contrary interpretation of the policies would permit the insurance company to be paid for a period of eight days without assuming any risk whatsoever. A construction of an insurance policy which gives insurance for less period of time than that covered by the premiums paid should not be adopted. Central Mut. Ins. Co. of Chicago v. St. Paul Mercury Indemnity Co. of St. Paul, 291 Ill. App. 50, 55, 9 N.E.2d 355. It is well established law that where a policy of insurance is susceptible to two constructions, the one that is more favorable to the insured and which would not amount to a forfeiture as to the benefits should be adopted. Lentin v. Continental Assur. Co., 412 Ill. 158, 163, 105 N.E.2d 735, 343 Ill. App. 193, 98 N.E.2d 544.

The decision of the trial court should be affirmed.